UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-10

CANDRIA SCHULTZ                                                                                    PLAINTIFF

V.

HYDRO-GEAR LIMITED PARTNERSHIP
and
INNOVATIVE STAFF SOLUTION, INC.                                                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Defendants' motions to dismiss (DN 10 and DN 19). Plaintiff has responded (DN 22) and Defendants have replied (DN 24 and DN 25). This matter is now ripe for adjudication. For the following reasons, Defendants' motions to dismiss (DN 10 and DN 19) are GRANTED.

## BACKGROUND

In March 2010, Plaintiff Candria Schultz ("Plaintiff") was hired by Defendant Innovative Staff Solutions ("ISS") and assigned to work at Defendant Hydro-Gear Limited Partnership ("Hydro-Gear"), where she worked in assembly.[1] Plaintiff's direct supervisor was Brian Joiner, an employee of Hydro-Gear. Plaintiff alleges that, beginning approximately two weeks after she began working at Hydro-Gear, she was sexually harassed by Mr. Joiner. Mr. Joiner allegedly repeatedly informed Plaintiff that, in order to be hired full-time by Hydro-Gear, she would have to submit to his sexual demands. Plaintiff submitted to Mr. Joiner's sexual demands in January 2011. In May 2011, Plaintiff reported the sexual harassment to Christie Boudro, the on-site

---

[1] In her complaint, Plaintiff states that she was hired by ISS and assigned to Hydro-Gear in early 2009. However, in Plaintiff's response to Defendants' motions to dismiss and in her supporting affidavit, she "clarifies that she began working for the Defendants in March 2010." DN 22 at p. 2 n. 2; DN 22-1.

1

manager for ISS at the time. Plaintiff alleges that she was sent home without pay so that ISS could investigate the complaint. According to Plaintiff, upon her return to work, Defendants disciplined her "because, allegedly, some individual had complained about the language that she used on the line." DN 1 at ¶ 19. Allegedly, Ms. Boudro further informed Plaintiff that she must continue working with Mr. Joiner and that she would be terminated if she shared her complaints with anyone else. Plaintiff resigned four days later "due to the hostile environment created by Joiner and the Defendants' failure to properly investigate and remedy it." *Id.*

Plaintiff then filed a charge of discrimination with the Kentucky Commission on Human Rights and the United States Equal Employment Opportunity Commission (EEOC) on June 6, 2011. Plaintiff received a notice of right to sue from the EEOC on December 16, 2011. Plaintiff then filed the complaint in this action on January 30, 2012. In the complaint, Plaintiff asserts claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and KRS 344.010 *et seq.* Plaintiff also asserts claims against Defendants for negligent retention, intentional infliction of emotional distress, and negligence.

Defendants now move to dismiss Plaintiff's complaint on the grounds of judicial estoppel. On February 24, 2010, prior to filing the complaint in this action, Plaintiff and her then-husband filed a voluntary petition for Chapter 13 bankruptcy in United States Bankruptcy Court for the Western District of Kentucky. DN 10-2 at p. 4. Of importance to this action are two sections of Plaintiff's bankruptcy petition. First, the "Statement of Financial Affairs" section required Plaintiff and her then-husband to "[s]tate the gross amount of income the debtor has received from employment . . . from the beginning of this calendar year to the date this case was commenced." DN 10-2 at p. 14. Plaintiff did not list ISS as her employer when the petition was filed, and did not amend her bankruptcy schedules to add ISS as an employer at any time

thereafter.  However, Plaintiff did notify the bankruptcy court that she was employed by ISS and the bankruptcy court subsequently ordered the deduction of wages on April 27, 2011.  *Id*. at p. 52.  Second,  the "Schedule B – Personal Property" section of the bankruptcy petition required Plaintiff and her then-husband to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and to "[g]ive estimated value of each."  *Id*. at p. 23.  Plaintiff did not list her sexual harassment and retaliation claims against Defendants and did not amend her bankruptcy schedules to reflect these claims until March 15, 2012, more than a month *after* Defendants filed their motions to dismiss in this case.  The bankruptcy court confirmed the payment plan on April 19, 2010.

Also of importance, on August 24, 2011, Plaintiff filed a motion to modify the repayment schedule previously confirmed by the bankruptcy court.  In support of that motion, Plaintiff stated that she and her husband had divorced and as a result were unable to continue making the current payments.  Plaintiff attached amended schedules to that motion, and requested a decrease in their plan payments.  The amended schedules did not reflect Plaintiff's claims against Defendants.  The bankruptcy court granted the motion on September 16, 2011.

Defendants contend that, because Plaintiff never amended her bankruptcy schedules to accurately reflect her income from ISS or the existence of her alleged claims and the contingent assets associated with those claims, Plaintiff is judicially estopped from asserting the claims and damages at issue in this action.

**STANDARD**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*,

188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here, Defendant ISS has attached a supporting affidavit of its attorney which merely lists several exhibits attached to the affidavit. The exhibits include Plaintiff's voluntary petition for Chapter 13 bankruptcy and the related schedules and documents, various documents filed in the bankruptcy proceedings, Plaintiff's charge of discrimination filed with the EEOC, and the notice of the right to sue. These are all public records which may be considered by the Court in ruling on a Rule 12(b)(6) motion to dismiss. ISS has also attached supporting case law to its motion to dismiss. Plaintiff, in her response, has

4

attached her own affidavit and the amended bankruptcy schedules filed in her bankruptcy proceedings. Plaintiff's affidavit constitutes materials outside the pleadings.

Where a district court considers materials outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the court may enter summary judgment *sua sponte* if losing party is put on notice that she is required to come forward with all of her evidentiary materials pertinent to the issue. *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998). "Whether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case. *Id*. (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 393 (6th Cir.1975)). Notice is required where one party is likely to be surprised by the proceedings. *Id.* Here, Plaintiff presented the Court with evidence outside the pleadings as part of her response to Defendants' motions to dismiss. A party cannot claim to have been "surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993). Accordingly, the facts and circumstances of this case indicate that Plaintiff is unlikely to be surprised by the conversion of the motions to dismiss into a motion for summary judgment. The Court therefore converts the pending motions to dismiss into ones for summary judgment.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and

draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Pursuant to Section 521 of the Bankruptcy Code, a debtor is required to file "a schedule of assets and liabilities[,] a schedule of current income and current expenditures[,] [and] a statement of the debtor's financial affairs . . . ." 11 U.S.C. § 521(a)(1)(B). It is well-settled that a cause of action is an asset that must be scheduled pursuant to § 521. *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Additionally, "[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). Here, Defendants contend that, because Plaintiff did not list her claims in her bankruptcy petition and never amended her schedules to list the claims, the doctrine of judicial estoppel bars Plaintiff from asserting the claims in this action.

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir.1990)). The Sixth Circuit "has stressed that the doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id*. at 776 (quoting *Teledyne Indus.,* 911 F.2d at 1218). "[T]he evil to be avoided is colorfully described as 'the perversion of the judicial machinery,' 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' and 'having one's cake and eating it too.'" *Id*. (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)) (internal alterations omitted).

Both of the *Browning* factors are met in this case. First, Plaintiff's pursuit of her claims against Defendants in this action is "contrary to" her sworn bankruptcy petition, in which she represented under oath that she had no contingent or unliquidated claims of any nature. The Sixth Circuit has held that pursuing a cause of action which was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support the application of judicial estoppel. *See, e.g.*, *Eubanks*, 385 F.3d at 898; *Browning*, 283 F.3d at 775; *Lewis v. Weyerhaeuser Co*., 141 Fed. Appx. 420, 425 (6th Cir. 2005). Second, the bankruptcy court adopted that contrary position when it confirmed Plaintiff's and her then-husband's Chapter 13 plan and again when it granted Plaintiff's motion to modify the repayment schedule. The Sixth Circuit has held that "when a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given

position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Reynolds*, 861 F.2d at 473.

However, Plaintiff contends that the doctrine of judicial estoppel does not bar her claims against Defendants because her failure to disclose her claims in her bankruptcy proceedings was merely inadvertent. It is well-settled that the doctrine of judicial estoppel is not applicable where a prior inconsistent position occurred because of "mistake or inadvertence." *Browning*, 283 F.3d at 776. A debtor's position may be inadvertent "where a debtor lacks the knowledge of the factual basis of the undisclosed claim or where the debtor has no motive for concealment." *Eubanks*, 385 F.3d at 898. Additionally, courts must consider the absence of bad faith in determining whether to apply judicial estoppel. *Eubanks*, 385 F.3d at 895. The Sixth Circuit has explained that "even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional." *Lewis*, 141 Fed. Appx. at 426.

Plaintiff contends that she lacked the factual knowledge of her undisclosed claim. In support of this position, Plaintiff states that she "had no way of knowing what constituted, legally, a hostile working environment severe enough to equate sexual harassment." DN 22 at p. 7. However, Plaintiff concedes that "the conduct that may have 'tipped the scale'" with regards to her knowledge of her potential claim occurred in January 2011 when Mr. Joiner allegedly forced Plaintiff to have sexual intercourse with him in order to secure full-time employment. Plaintiff Response, DN 22 at p. 9. Nevertheless, by any rate, Plaintiff knew of her undisclosed claim when she filed a charge of discrimination with the EEOC in June 2011. Despite this knowledge and the pending EEOC charge, Plaintiff failed to amend her bankruptcy schedules to

reflect the claims when she filed a motion to modify the repayment schedule in August 2011. Thus, Plaintiff was well-aware of the factual basis for the undisclosed sexual harassment and retaliation claims.

Additionally, Plaintiff had a motive to conceal the undisclosed claims. The Sixth Circuit has stated that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 Fed. Appx. at 426. That is because if Plaintiff's sexual harassment and retaliation claims became a part of her bankruptcy estate, then the proceeds from the claims would go towards paying Plaintiff's creditors instead of simply paying her. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 479 (6th Cir. 2010).

Despite Plaintiff's factual knowledge of her claims and her motive to conceal her claims, Plaintiff argues that judicial estoppel should not be applied here due to an absence of bad faith. Plaintiff states that she did not fail to disclose her contingent cause of action to the bankruptcy court to "game the system" or to "pull one over" on the courts. Instead, Plaintiff claims that, "as a layperson, [she] did not recognize the need to disclose her claim to the bankruptcy court, and she inadvertently left it out." Plaintiff Response, DN 22 at p. 10; Schultz Affidavit, DN 22 at ¶ 5. Additionally, Plaintiff points out that she did not disclose ISS or Hydro-Gear as her employer because she was not an employee of Defendants on February 24, 2010 when she filed the petition for bankruptcy. However, Plaintiff contends that she did not amend her bankruptcy schedules to reflect her subsequent employment because "Plaintiff's then-husband was paying the required amount each month and she did not believe she was required to inform the Court of her employer." DN 22 at p. 5; Schultz Affidavit, DN 22-1 at ¶ 4. Finally, Plaintiff points out that she has now amended her bankruptcy schedules to reflect her claims against Defendants and that her creditors will therefore benefit from her claims going forward. *Id*.

As explained above, a plaintiff may show an absence of bad faith "by showing her attempts to correct her initial omission. Since the bankruptcy system depends on accurate and timely disclosures, the extent of those efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480. However, "since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing of [the plaintiff's] effort is also significant. Consequently, efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss." *Id*.

In *Eubanks*, where the Sixth Circuit declined to apply judicial estoppel to bar the plaintiffs' lender liability claim, the plaintiffs made the following affirmative efforts to apprise the bankruptcy court of their cause of action: (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over the course of several months whether he intended to pursue the claim; (3) moved the bankruptcy court for a status conference on the issue of the claim; (4) unsuccessfully moved to allow the bankruptcy trustee to be substituted for the plaintiffs in the lender liability action after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel. *Eubanks*, 385 F.3d at 895-97. Based on these "constant affirmative actions" by the plaintiffs to inform the bankruptcy trustee and the bankruptcy court of their claim, the Sixth Circuit concluded that the omission was merely inadvertent and declined to apply judicial estoppel. *Id*. at 899.

Here, in contrast to the plaintiff's efforts in *Eubanks*, Plaintiff has presented no evidence that she made any affirmative efforts to apprise the bankruptcy court or the bankruptcy trustee of her claims against Defendants until she amended the bankruptcy schedule one month *after* Defendants filed their motion to dismiss on the grounds of judicial estoppel. Plaintiff's late effort to disclose her claims is entitled to little weight due to the timing of Plaintiff's amendment. *See White*, 617 F.3d at 480; *Burnes v. Pemco Aeroplex, Inc.* 291 F.3d 1282, 1286 (11th Cir.2002) (citations omitted) (Allowing plaintiffs to amend their bankruptcy filings only after a challenge by an adversary "suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of debtors' assets.").

Furthermore, Plaintiff's assertion that she was "simply unaware" of the need to amend her bankruptcy schedules to reflect these claims does not preclude the application of judicial estoppel. *See Rose v. Beverly Health & Rehab. Servs ., Inc.,* 295 F. App'x 142, 144 (9th Cir.2008) (finding the plaintiff's "claimed subjective ignorance of the disclosure requirements" does not prevent the application of judicial estoppel); *Kamont v. West,* 83 F. App'x 1, 2 (5th Cir.2003) ("A lack of awareness of the statutory disclosure duty [in bankruptcy cases] is simply not relevant to the question of judicial estoppel." (*citing In re Coastal Plains,* 179 F.3d at 212); *Dickerson v. Fed. Exp. Corp.*, 2:08-CV-02868, 2010 WL 8747316 (W.D. Tenn. Mar. 10, 2010) (finding that the plaintiff's unawareness of Chapter 13 disclosure requirements did not preclude the application of judicial estoppel).

In sum, the elements for applying the doctrine of judicial estoppel are met in this case. Plaintiff asserted a contrary position in her bankruptcy proceedings and the bankruptcy court relied upon that position. Although the consequences of judicial estoppel are undeniably harsh

11

and the Court is certainly sympathetic to Plaintiff's plight, especially if the facts as alleged in Plaintiff's complaint are true, Plaintiff has presented no evidence from which the Court may infer that her omissions and failures to amend her bankruptcy schedules were due to mistake or inadvertence and not due to bad faith. Accordingly, Plaintiff is estopped from asserting her claims against Defendants in this action.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss (DN 10 and DN 19) are converted to motions for summary judgment, and summary judgment will be GRANTED in favor of Defendants. A separate order consistent with this opinion shall issue.